IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| COLORQUICK, L.L.C. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 6:06-CV-390 |
| v. | § | |
| | § | JURY DEMANDED |
| EASTMAN KODAK COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

---

## PLAINTIFF COLORQUICK, L.L.C.'S
## OPENING CLAIM CONSTRUCTION BRIEF

---

Dated: April 16, 2008

Michael W. Shore, Attorney-in-Charge
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
**Shore Chan Bragalone LLP**
325 N. St. Paul Street, Suite 4450
Dallas, Texas 75201
(214) 593-9110 Telephone
(214) 593-9111 Facsimile

**ATTORNEYS FOR PLAINTIFF
COLORQUICK, L.L.C.**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  U.S. PATENT NO. 6,839,149 AND THE CLAIM TERMS AT ISSUE ........................... 1

III. THE PROPER CONSTRUCTION OF "STILL IMAGE PROXY,"
     "IMAGE DISPLAY," AND "PDL IMAGE FILE" ...................................................... 5

     A.   "Still Image Proxy" is Defined in the Specification ............................... 5

     B.   "Image Display" Means "Graphic Representation on a Screen" ............. 7

     C.   The "PDL Image File" Need Not Instruct the User ................................ 8

IV.  ADDITIONAL TERMS THAT KODAK SEEKS TO CONSTRUE .................................... 9

     A.   "Static Template" and "Template" Do Not Require Construction ......... 9

     B.   "Postscript or PDF File" Does Not Require Construction.................... 11

V.   CLAIM LANGUAGE THAT KODAK ASKS THE COURT TO REWRITE ..................... 12

     A.   Courts Routinely Reject Attempts to Rewrite Claims ......................... 12

     B.   The "Electronically Manipulating" Steps Do Not Require Additional
          Construction ......................................................................................... 15

     C.   The Steps of "Using the Information About the Manipulations to Revise
          the PDL  Image File" Are Not Required to be Performed Automatically ........... 20

VI.  CONCLUSION................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Cases**

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371 (Fed. Cir. 2007) ................ 15

*Grantley Patent Holdings, Ltd. v. Clear Channel Commc'n, Inc.*, No. 9:06CV259,
2008 WL 112119 (E.D. Tex. Jan. 8, 2008) ........................................................... 8, 12, 13

*GWIN, Inc. v. Don Best Sports*, No. 2:06-CV-318, 2008 WL 379690
(E.D. Tex.  Feb. 11, 2008) ......................................................................................... 22

*Harris Corp. v. IXYS Corp.*, 114 F.3d 1149 (Fed. Cir. 1997) ......................................... 6

*Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342 (Fed. Cir. 1998) .......................... 18

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) ..................... 14, 21

*Mass Engineered Design, Inc. v. Ergotron, Inc.*, No. 206CV272, 2008 WL 695900
(E.D. Tex. Mar. 13, 2008) ............................................................................................ 6

*Maytag Corp. v. Electrolux Home Prods.*, 411 F. Supp. 2d 1008 (D. Iowa 2006) ...................... 12

*Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717 (E.D. Tex. 2005) ........................... 13, 14, 21

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ......................................... 14, 21

*RFID Tracker Ltd. v. Wal-Mart Stores, Inc.*, No. 6:06CV363, 2008 WL 382317
(E.D. Tex. Feb. 11, 2008) ............................................................................................. 13

*Roche Diagnostics Corp. v. Apex Biotech. Corp.*, 455 F. Supp. 2d 840 (S.D. Ind. 2005) ............. 6

*Synthes (USA) v Smith & Nephew, Inc.*, No. 03-cv-0084, 2008 WL 343114
(E.D. Pa. Feb. 4, 2008) ................................................................................................. 6

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ........................... 13

*Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........................... 18

*Wacom Co. v. Hanvon Corp.*, No. C06-5701RJB, 2007 WL 4561098 (W.D. Wash.
Dec. 21, 2007) .............................................................................................................. 11

*WIMCO, LLC v. Lange Indus., Inc.,* No. 06-CV-3565, 2007 WL 4461629
(D. Minn. Dec. 14, 2007) .............................................................................................. 6

*Wright Medical Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440 (Fed. Cir. 1997) ........................ 10

**Statutes**

35 U.S.C. § 112 .................................................................................................................. 14

### INDEX TO EXHIBITS

**EXHIBIT**                                           **DESCRIPTION**

A          U.S. Patent No. 6,839,149

B          ColorQuick Extrinsic Evidence from *The American Heritage Dictionary* at
           1412 (4th Ed. 2000)

C          ColorQuick Extrinsic Evidence from *Webster's New World Dictionary of
           Computer Terms*  at 181 (5th Ed. 1994)

D          ColorQuick Extrinsic Evidence, Adobe Postcript 3 Printing Glossary,
           http://www.adobe.com/products/postcripts/glossary.html

E          ColorQuick Extrinsic Evidence from *Merriam Webster's Collegiate
           Dictionary* at 708 (Tenth Ed. 1998)

F          ColorQuick Extrinsic Evidence from *The American Heritage Dictionary* at
           1492 (4th Ed. 2000)

Plaintiff ColorQuick, L.L.C. respectfully submits this opening claim construction brief setting forth its proposed constructions of the disputed terms and phrases of the asserted claims of U.S. Patent No. 6,839,149, and addressing the proposed constructions set forth by Defendant Eastman Kodak Company.

## I.    INTRODUCTION

This is a straightforward case.  By and large, the asserted claims of the '149 patent have their plain and ordinary meaning and do not require construction.  Thus, ColorQuick seeks only to construe three terms that might be difficult for a lay juror to understand in the abstract.  ColorQuick asks the Court to construe "still image proxy," "image display," and "PDL image file" because the meanings of these terms may not be readily evident to a lay juror, and because they appear in almost every asserted claim.  ColorQuick's constructions of these terms are supported by intrinsic and extrinsic evidence.

In contrast, Kodak asks the Court to construe lengthy passages of claim language—to literally rewrite the claims—and offers constructions that will confuse rather than help a lay juror.  Kodak also attempts to limit the asserted claims to one particular preferred embodiment disclosed in the specification.  But contrary to Kodak's position, the specification of the '149 patent explicitly discloses numerous embodiments in a non-limiting, open fashion.

## II.    U.S. PATENT NO. 6,839,149 AND THE CLAIM TERMS AT ISSUE

ColorQuick's '149 patent describes and claims inventions relating generally to the printing industry and, more specifically, to the process of submitting documents for printing, known as the prepress process.  (*See* Exhibit A, '149 patent at col. 1, line 25 – col. 2, line 33.)  The inventions of the '149 patent are directed to processes for preparing production data for a print job.  (*See* Exhibit A at col. 2, lines 36-37.)

In one embodiment disclosed in the '149 patent, the production data may include an electronic document and a predetermined area in which the electronic document fits. (*See* Exhibit A at col. 4, lines 56-59.) The electronic document is defined by a page description language (PDL) and stored in a PDL image file having predetermined physical dimensions. (*See* Exhibit A at col. 4, lines 56-60.) In that embodiment, a still image proxy of the PDL image file is created, and a static template that defines the predetermined area is created. (*See* Exhibit A at col. 4, lines 60-63.) Then an image display of the still image proxy is displayed in association with the static template, and the image display is electronically manipulated. (*See* Exhibit A at col. 5, lines 2-4.) Information about those manipulations are recorded and subsequently used to revise the PDL image file to match it to the manipulations made to the image display of the still image proxy. (*See* Exhibit A at col. 5, lines 5-8.)

ColorQuick accuses Kodak of infringing independent claims 1 and 25 and dependent claims 2, 3, 11, 26, 27, and 35 of the '149 patent. These claims are reproduced below. The claim terms ColorQuick asks the Court to construe are highlighted in *italicized* text, and the claim language that Kodak asks the Court to construe are underlined:

> 1. An automated computer-implemented method of preparing production data for a print job, the production data including an electronic document defined by a page description language (PDL), the electronic document being stored in a PDL image file, the method comprising:
> (a) creating a *still image proxy* of the *PDL image file*;
> (b) electronically manipulating an *image display* of the *still image proxy* and recording information about the manipulations; and
> (c) using the information about the manipulations to revise the *PDL image file* so as to match the *PDL image file* to the manipulations made to the *image display* of the *still image proxy*.

2. The method of claim 1 wherein the production data further comprises a predetermined area in which the electronic document must fit, the method further comprising:

(d) creating a static template that defines the predetermined area and displaying the *image display* of the *still image proxy* in association with the template, and

step (b) further comprising electronically manipulating the *image display* of the *still image proxy* in relation to the template and recording information about the manipulations in relation to the template, and

step (c) further comprising using the information about the manipulations to revise the *PDL image file* so as to match the *PDL image file* to the manipulations made to the *image display* of the *still image proxy* in relation to the template.

3. The method of claim 2 further comprising:

(d) inserting the *still image proxy* and the template into a browser-compatible application program that allows for electronic manipulation of the *image display* of the *still image proxy* with respect to the template within a browser.

11. The method of claim 1 wherein the *PDL image file* is a Postscript or PDF file.

25. An article of manufacture for preparing production data for a print job, the production data including an electronic document defined by a page description language (PDL), the electronic document being stored in a PDL image file, the article of manufacture comprising a computer-readable medium holding computer-executable instructions for performing a method comprising:

(a) creating a *still image proxy* of the *PDL image file*;

(b) <u>electronically manipulating an *image display* of the *still image proxy*</u> and recording information about the manipulations; and

(c) <u>using the information about the manipulations to revise the *PDL image file* so as to match the *PDL image file* to the manipulations made to the *image display* of the *still image proxy*</u>.

26. The article of manufacture of claim 25 wherein the production data further comprises a predetermined area in which the electronic document must fit, and the computer-executable instructions perform a method further comprising:

(d) creating a <u>static template</u> that defines the predetermined area and displaying the <u>*image display*</u> of the <u>*still image proxy*</u> in association with the <u>template</u>, and

step (b) further comprising <u>electronically manipulating the *image display* of the *still image proxy* in relation to the template</u> and recording information about the manipulations in relation to the <u>template</u>, and

step (c) further comprising <u>using the information about the manipulations to revise the *PDL image file* so as to match the *PDL image file* to the manipulations made to the *image display* of the *still image proxy* in relation to the template</u>.

27. The article of manufacture of claim 26 wherein the computer-executable instructions perform a method further comprising:

(d) inserting the <u>*still image proxy*</u> and the <u>template</u> into a browser-compatible application program that allows for <u>electronic manipulation of the *image display* of the *still image proxy* with respect to the template</u> within a browser.

35. The article of manufacture of claim 25 wherein the <u>*PDL image file*</u> is a <u>Postscript or PDF file</u>.

As the foregoing recitation of claim language and identification of disputed claim terms illustrates, Kodak seeks construction of approximately half of the claim language.  Kodak is not seeking to construe the claims, but instead to rewrite them.

### III.   THE PROPER CONSTRUCTION OF "STILL IMAGE PROXY," "IMAGE DISPLAY," AND "PDL IMAGE FILE"

### A.   "Still Image Proxy" is Defined in the Specification

Each asserted claim explicitly includes the term "still image proxy."  The '149 patent defines "still image proxy," repeatedly stating that "[t]he still image proxy may be a JPEG file, a GIF file, a PNG file, or the like."  (*See* Exhibit A at abstract, col. 2, lines 42-44, col. 3, lines 66-67, and col. 6, lines 21-22.)  These non-exclusive examples provide explicit guidance that would assist a person of ordinary skill in the art to understand the meaning of the term.  Furthermore, even though the meaning of the word "proxy" is readily understood by a person of skill in the art, as well as a lay juror, the dictionary definition of "proxy" gives further guidance:  "an agent or substitute."  (Exhibit B, *American Heritage Dictionary* at 1412 (4th ed. 2000).)  Thus, the claim term "still image proxy" very clearly means "a substitute still image file, which may be a JPEG, GIF, and PNG file or the like."

In contrast, Kodak's proposed construction is substantially lengthier and more complex: "a computer file, such as a JPEG, GIF, PNG, or the like, that substitutes for the PDL image file and specifies the appearance of the electronic document when presented on a display screen." Kodak's construction creates more uncertainty instead of adding clarity.

First, Kodak's construction does not address the "still" limitation at all.  It effectively reads the word "still" out of the claims, which is improper because it is presumed that every word in the claim adds meaning to that claim.  *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149,

1151 (Fed. Cir. 1997). Kodak is construing "still image proxy" such that it would cover non-still, or moving, images, which is contrary to every example given in the specification.

Second, the inclusion of the words "for the PDL image file" is unnecessary and redundant, as the claim language of independent claims 1 and 25 clearly state that the method includes "creating a still image proxy of the PDL image file." (*See* Exhibit A at col. 11, line 51 and col. 13, line 58.) Including language in the construction that is already present in the claims is confusing and unhelpful. *See, e.g.*, *WIMCO, LLC v. Lange Indus., Inc.,* No. 06-CV-3565, 2007 WL 4461629, at *9 (D. Minn. Dec. 14, 2007) (rejecting proposed construction when it simply "repeats the claim language"); *Synthes (USA) v Smith & Nephew, Inc.*, No. 03-cv-0084, 2008 WL 343114, at *7 (E.D. Pa. Feb. 4, 2008) (no reason to construe a term when proposed construction "largely repeats the plain language of the claim term itself").

Third, Kodak's requirement that a "still image proxy" "specifies the appearance of the electronic document when presented on a display screen" is unsupported by the specification. Such additional limitations are not recited by the '149 patent's description and use of "still image proxy." (*See, e.g.*, Exhibit A at abstract, col. 2, lines 42-44, col. 3, lines 66-67, and col. 6, lines 21-22.) This addition of an unsupported functional limitation is an improper attempt to back-load un-recited steps into the method claims of the '149 patent. *See Roche Diagnostics Corp. v. Apex Biotech. Corp.*, 455 F. Supp. 2d 840, 863-64 (S.D. Ind. 2005) (declining to include an "accessing" function to the meaning of "processor means" because the phrase does not describe a supported functionality in the claim). Furthermore, Kodak's inclusion of the functional limitation adds uncertainty about what the functional limitation means. *See Mass Engineered Design, Inc. v. Ergotron, Inc.*, No. 206CV272, 2008 WL 695900, *6 (E.D. Tex. Mar. 13, 2008) (rejecting a proposed construction that "is ambiguous and would be unhelpful to the fact-finder"

because a term within the proposed construction is not defined).   In particular, Kodak's construction would unnecessarily create an additional factual question about whether an accused instrumentality "presents" a still image proxy on a display screen.

Thus, Kodak's proposed construction of "still image proxy" contains unnecessary limitations and verbiage that neither clarifies its meaning nor helps the jury better understand the '149 patent.   In contrast, ColorQuick's proposed construction is straightforward and consistent with the remaining claim language and the specification's own definition and accords with extrinsic dictionary definitions of the word "proxy."   The Court should adopt ColorQuick's clear-cut construction of "still image proxy" over Kodak's complicated, confusing, and incorrect definition.

## B.      "Image Display" Means "Graphic Representation on a Screen"

As is also true with "still image proxy," the term "image display" is present explicitly in each asserted claim.   ColorQuick proposes that the Court construe "image display" as a "graphic representation on a screen."   This construction gives meaning to both words comprising the term: "image" and "display."   Further, the construction is consistent with the '149 patent's intrinsic record.   The specification and claims describe that it is "graphic elements" of the "image display" of the "still image proxy" that are manipulated.   (Exhibit A at col. 10, lines 48-51.) Further, ColorQuick's proposed construction is consistent with a lay juror's understanding of the word "display" as reflected by *Webster's New World Dictionary of Computer Terms*, which defines "display" as "the physical representation of data, as on a screen; the process of creating a visual representation of graphic data on an output device."   (Exhibit C, *Webster's New World Dictionary of Computer Terms* at 181 (5th ed. 1994).)

Kodak proposes that this term be construed as "a visual representation presented on a display screen," which again unnecessarily adds limitations that create complexity and uncertainty. In particular, Kodak adds a limitation that the "image display" is "presented on a display screen." The use of the verb "presented" adds a functional limitation that is unwarranted and creates uncertainty about what "presented" means. This appears to be an attempt to create an issue that Kodak can later use in a noninfringment analysis about whether Kodak "presents" an image display on a screen. Such use of claim construction is improper. *See Grantley Patent Holdings, Ltd. v. Clear Channel Commc'n, Inc.*, No. 9:06CV259, 2008 WL 112119, *8 (E.D. Tex. Jan. 8, 2008) (Clark, J.) ("Arguments calculated to establish that an accused device does not infringe, or that a claim is obvious, are better presented at a later date."). Thus, the Court should adopt ColorQuick's proposed construction of "image display," which does not create additional terms that would require additional constructions to be applied by the Court or a jury.

## C.     The "PDL Image File" Need Not Instruct the User

Once again, this term is present throughout the asserted claims. ColorQuick proposes that the term be construed to mean "a computer file containing page description language (PDL) that defines the appearance of an electronic document when printed." This construction is consistent with the intrinsic record as well as extrinsic evidence. The '149 patent's specification states that "[t]he electronic document is stored in a PDL image file, such as a Postscript file, a PDF file, or the like." (*See* Exhibit A at col. 2, lines 40-42.) The specification further states that "[a] page description language (PDL) is a computer language that defines how elements such as text and graphics appear on the printed page (*i.e.,* the layout and contents of a printed page)." (Exhibit A at col. 2, lines 1-4.) Further, the Adobe Postscript 3 Printing Glossary, which was disclosed during prosecution of the '149 patent and became part of its intrinsic record, defines

PDL as "software that resides within a printer and defines how elements such as text and graphics appear on the printed page." (Exhibit D, Adobe Postscript 3 Printing Glossary.) All of this evidence supports ColorQuick's proposed construction, which helps a lay juror clearly understand the necessary structural and functional aspects of the term.

Kodak's proposed construction appears initially similar to ColorQuick's, but again adds unnecessary complexity that would only serve to confuse jurors. The parties' proposals are juxtaposed as follows, with language unique to ColorQuick underlined and language unique to Kodak in [brackets]: "a computer file containing page description language (PDL) [instructions] that defines the appearance of an electronic document when printed." Kodak's inclusion of the notion of "instructions" in the construction will likely confuse jurors and is unsupported by the specification. For example, Kodak's construction incorrectly suggests that the PDL image file must  actually instructs the printer on how the document should appear, while the '149 patent makes clear that the PDL file need only define certain printing parameters. ColorQuick's construction is simply easier to understand, while also being consistent with the usage of the terms in the claims and specification. Thus, the Court should adopt ColorQuick's proposed construction.

### IV.    ADDITIONAL TERMS THAT KODAK SEEKS TO CONSTRUE

### A.    "Static Template" and "Template" Do Not Require Construction

The term "static template" does not require construction because it is sufficiently defined by the claims themselves.[1]   The term is present in claims 2 and 26, and both claims disclose "creating *a static template that defines the predetermined area* and displaying the image display

---

[1] The term "static template" is the antecedent basis for the term "template," which appears later in the same independent claims and also in the dependent claims. Thus, "template" should be given the same meaning as "static template." ColorQuick understands that Kodak does not dispute this point, and thus ColorQuick will not devote argument to it in this Opening Claim Construction Brief.

of the still image proxy in associate with the template." (Exhibit A at col. 11, lines 63-64 and col. 14, lines 8-9 (emphasis added).)  Both claims also explain that "the predetermined area" is that area "in which the electronic document must fit." (Exhibit A at col. 11, lines 61-62 and col. 14, lines 6-7.)  Thus, the claims explicitly define the "static template," and the term has its plain meaning in that context.  Construction of the term serves only to complicate matters and confuse a lay juror.  In the alternative, if the Court should determine that the term should be construed, ColorQuick proposes that it be construed as "a template that defines a predetermined area for an image display of a still image proxy," which literally tracks the claim language itself and detailed description in the specification.  (*See* Exhibit A at col. 4, lines 3-6 and col. 4, lines 62-63.)

The Court should not adopt Kodak's construction because it is overly limiting and not supported by the specification.  Kodak proposes that the "static template" be construed as "a fixed frame presented on the display screen that corresponds to a predetermined area in which the electronic document must fit when printed, and in relation to which the image display of the still image proxy is manipulated."  Kodak's construction improperly adds limitations and does nothing to help a lay juror better understand "static template."

Kodak's added "fixed frame" limitation is unsupported by the specification (which never recites "fixed frame" when describing "static template" or "template") and inconsistent with the "dynamically created" static template of dependent claim 7.  The word "fixed" suggests that the template is static, which would impermissibly read dependent claim 7 out of the '149 patent.  *See Wright Medical Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997).  Furthermore, Kodak's added "fixed frame" limitation fails to recognize that the claims require that the "static template" "defines the predetermined area."  (Exhibit A at col. 4, lines 3-6 and col. 4, lines 62-63.)  Essentially, Kodak just replaces the word "template" with the word "fixed

frame." This illustrates that the term "static template" does not need construction. Further, the limitation that the "fixed frame" must be "presented on a display screen" adds uncertainty about what the verb "presented" means and what constitutes a "display screen." As with all of the constructions it proposes in this case, Kodak would benefit from the *Wacom* court's guidance that "claim constructions should be governed by Ockham's Razor, which states that one should not increase, beyond what is necessary, the complexity required to explain anything." *Wacom Co. v. Hanvon Corp.*, No. C06-5701RJB, 2007 WL 4561098, *3 (W.D. Wash. Dec. 21, 2007).

In sum, the Court need not construe "static template" and "template," as these straightforward terms can be understood by a lay juror. Kodak's proposed construction adds limitations to the term that are not supported by the specification and do not clarify its meaning. If the Court decides to construe the term, it should adopt ColorQuick's proposal, which literally tracks the language of the '149 patent's claims and specification.

**B.      "Postscript or PDF File" Does Not Require Construction**

The term "Postscript or PDF File" also does not require construction. It should be accorded its plain and customary meaning to a person of skill in the art. ColorQuick respectfully submits that construing this term does not add clarity, but rather just adds unnecessary verbiage for the fact-finder to consider in determining infringement and validity at a later stage. Indeed, this Court uses similar terms, without further definition, in its own rules and publications. *See, e.g.*, U.S. District Court for the Eastern District of Texas, *Electronic Case Files CM/ECF User Manual* at 4, 5, 7, 14, 16, 17, 27, 30, 32, 36, 43, and 44 (Apr. 2004) (reciting "PDF file"). Alternatively, if the Court determines that this term should be construed, ColorQuick does not oppose the construction proposed by Kodak, with one minor change: "a computer file that complies with either the PostScript (.ps) or Portable Document Format (.pdf)." Kodak's

proposed construction is:  "a computer file that complies with either the PostScript (.ps) or Portable Document Format (.pdf) <u>formats developed by Adobe.</u>" (emphasis added.)  There is no reason to limit the definition to versions of the .ps and .pdf files developed by Adobe, as Kodak has suggested.

## V.    CLAIM LANGUAGE THAT KODAK ASKS THE COURT TO REWRITE

### A.    Courts Routinely Reject Attempts to Rewrite Claims

In addition to the terms discussed in sections III and IV above, Kodak also proposes that the Court rewrite much of the claim language in an effort calculated to determine infringement or validity during claim construction, instead of leaving those issues to the finder of fact.  This is an impermissible approach to claim construction, as Judge Ron Clark of the Eastern District recently explained.  In *Grantley Patent Holdings, Ltd. v. Clear Channel Commc'n, Inc.*, Judge Clark rejected the defendants' submission of "entire steps from the respective claims" where the defendants "did not seem to be seeking a definition of a particular word or term."  2008 WL 112119 at *9.   The Court found the defendants' approach "troubling" and wondered whether it was "merely an effort to pollinate the record with alleged error."  *Id.* at *4.  Further, the Court viewed it as an attempt to obtain an advisory opinion about infringement or validity, and rightly refused to enter such an opinion:

> The court will not enter an advisory opinion delineating all of the systems and methods that are not described by the claims.   Arguments over whether a particular system infringes are inappropriate at the claim construction stage and will be dealt with at a later time.  Likewise, *the court will not undertake to rewrite paragraphs of claim language in a patent.*

*Id.* at *9 (emphasis added); *see also Maytag Corp. v. Electrolux Home Prods.*, 411 F. Supp. 2d 1008, 1036 (D. Iowa 2006) (to "construe terms to a greater extent than necessary to resolve the present controversy" "would . . . constitute an impermissible advisory opinion").

Kodak's approach to claim construction in this case is strikingly similar to the approach taken by the defendants in *Grantley* and rejected by Judge Clark. Here Kodak seeks construction of the following passages of claim language in their totality.

- "electronically manipulating an image display of the still image proxy" (claims 1 and 25)

- "electronically manipulating the image display of the still image proxy in relation to the template" (claims 2 and 26)

- "electronic manipulation of the image display of the still image proxy with respect to the template" (claims 3 and 27)

- "using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy" (claims 1 and 25)

- "using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy in relation to the template" (claims 2 and 26)

But as this Court has stated, "although every word used in a claim has a meaning, not every word requires a construction." *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005). Because several terms of the foregoing passages are jointly proposed for construction by the parties—"still image proxy," "image display," and "PDL image file"—Kodak's desire to construe the entire paragraphs in addition is an unnecessary and improper "exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (stating that claim construction should not be an "obligatory exercise in redundancy"). This case is similar to *RFID Tracker Ltd. v. Wal-Mart Stores, Inc.*, No. 6:06CV363, 2008 WL 382317 (E.D. Tex. Feb. 11, 2008), where this Court refused to construe entire paragraphs as a whole because the pertinent terms within it had already been construed. *See id.* at *13-14 ("The

Court has construed many terms within the disputed [] term.  The remaining claim language is clear and understandable to lay jurors.  Having resolved the disputes raised by the parties' construction, the Court will not construe the disputed term.").

By construing the aforementioned steps of the claims, Kodak also seeks to incorporate limitations from the specification into the claim terms.  For example, and as will be discussed in more detail below, Kodak seeks to incorporate a limitation that the PDL image file be automatically modified.  This is disclosed as an embodiment but is not required by the claims. The Federal Circuit and this Court have routinely held that courts should avoid doing just that. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*) (holding that courts should avoid importing limitations from the specification into the claim terms absent a clear disclaimer of claim scope); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *Orion IP,* 406 F. Supp. 2d at 729 (internal citations omitted) ("Although the preferred embodiment may do so, there is no clear evidence from the specification that the actual invention requires doing so.  Given that the claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal, the Court will not impose this limitation based on the claim language and specification.").  In the Joint P.R. 4-3 Statement, Kodak points to no language in the specification that requires limiting the claims to disclosed embodiments, because there is no such language.  Thus, the Court should refuse Kodak's invitation to limit the claim in that manner.

In effect, Kodak would have the Court construe the foregoing passages of claim language as means- or step-plus-function elements under 35 U.S.C. § 112 ¶6.  But Kodak did not designate any portions of the claims as being governed by § 112 ¶6 as required by P.R. 3-3(c), so Kodak should be prohibited from doing so now.  Notwithstanding, these claims do not contain

means- or step-plus-function elements, because the steps of the method claims of the '149 patent recite acts, as opposed to mere function.  *See Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371, 1382 (Fed. Cir. 2007) ("[W]e are unwilling to resort to that provision to constrain the scope of coverage of a claim limitation without a showing that the limitation contains nothing that can be construed as an act.").  Thus, Kodak's broad-brush approach to rewriting entire steps of the '149 patent's claimed methods is legally flawed and should be rejected *ab initio*.

**B.      The "Electronically Manipulating" Steps Do Not Require Additional Construction**

Kodak asks the Court to rewrite the "electronically manipulating" steps of claims 1, 2, 3, 25, 26, 27.  ColorQuick urges the Court to reject Kodak's proposal.  Those steps are reproduced below, with Kodak's proposed rewrites juxtaposed below them:

> Existing language
>
> "electronically manipulating an image display of the still image proxy"
> (claims 1 and 25)
>
> "electronically manipulating the image display of the still image proxy in relation to the template"
> (claims 2 and 26)
>
> "electronic manipulation of the image display of the still image proxy with respect to the template"
> (claims 3 and 27)
>
> Kodak's proposed rewrites
>
> "using a computer program to modify the appearance of an image display of the still image proxy to exactly reflect the desired appearance of the electronic document when printed"
> (claims 1 and 25)
>
> "using a computer program to modify the appearance of an image display of the still image proxy to exactly reflect the desired appearance of the electronic document when printed"
> (claims 2 and 26)

> "use of a computer program to modify the appearance of the image display of the still image proxy relative to the static template to exactly reflect the desired appearance of the electronic document when printed"
> (claims 3 and 27)

Kodak's rewrites are worded slightly differently, as shown above, but for purposes of this analysis they are very similar, so ColorQuick will focus its analysis on the step from claim 1 and Kodak's proposed rewrite of it.

It is unclear from Kodak's proposed construction which words Kodak believes are not understandable to a lay juror and in need of construction.  Both parties seek construction of the terms "image display" and "still image proxy," and Kodak seeks construction of "template," so the only other term that could possibly warrant construction—and ColorQuick does not believe it does warrant construction—is "electronically manipulating."  But Kodak has explicitly rejected the notion of construing "electronically manipulating" alone, saying that "[t]he term 'electronically manipulating' should be construed together with the rest of the language of the claim elements in which it is used to ensure the construction properly reflects the manner in which the term is used in the claims as opposed to construing the term in the abstract."  (Exhibit A to Joint P.R. 4-3 Statement at 14 (Docket No. 42).)  This rationale is inconsistent with Kodak's willingness to construe other claim terms individually, and exposes Kodak's true purpose of improperly rewriting the claim language with a view to its noninfringement and invalidity arguments.  It should be left to the finder of fact to determine whether a particular act constitutes "electronic manipulation."

The term "electronically manipulating" does not require construction because the specification does not give it a special definition.  In fact, the specification says that "the still image proxy can be manipulated in any manner that the original PDL image file may be manipulated," and that "any manipulations that can be performed on a PDF file can be performed

on the still image proxy and the scope of the invention includes all such manipulations." (Exhibit A at col. 7, lines 10-19.)  Further, the specification gives two specific, non-exclusive examples of "electronic manipulations," including making physical manipulations to and appending product specifications to the image display of the still image proxy.  (*See* Exhibit A at col. 8, lines 20-24.)

A person of skill in the art (and a lay juror, for that matter) would understand the term "electronically manipulating" as that term is used in the claims and as it is explained in the specification, and construction of the term does not add clarity to the claim language.  But should the Court determine that the term "electronically manipulating" does require construction, ColorQuick proposes that the term be construed to mean "managing, using, or altering by electronic means."  This alternative construction is simple and clear and could assist a lay juror in understanding the claim language, and it is supported by the explanation in the specification that "any manipulations that can be performed on a PDF file can be performed on the still image proxy and the scope of the invention includes all such manipulations."  (Exhibit A at col. 7, lines 10-19.)  Furthermore, this alternative construction is consistent with a lay juror's understanding of "manipulate" as "to manage or utilize skillfully."  (Exhibit E, *Merriam Webster's Collegiate Dictionary* at 708 (10th ed. 1998).)

In addition to the fact that Kodak's attempt to construe nearly the entire step is improper, Kodak's proposed construction of the step is flawed for additional reasons.  First, the limitation that the still image proxy be manipulated by "using a computer program" is not supported by the specification.  It is clear from the face of the '149 patent that it discloses processes that may be performed with the aid of computers.  Indeed, claim 1 is directed to "a computer-implemented method."  But Kodak's added limitation of "using a computer program" appears superfluous and

leads the fact finder to several confusing questions such as whether the article "a" means that there can only be one program, what constitutes a computer program, and how the program is used.

Second, the specification does not support the inclusion of Kodak's added limitation that the electronic manipulation must "modify the appearance of an image display of the still image proxy to exactly reflect the desired appearance of the electronic document when printed."  As an initial matter it should be noted that Kodak's inclusion of that language in the construction of this step is actually directed to the following step of the claimed methods, *i.e.*, the revision of the PDL image file to match the manipulations made to the image display of the still image proxy. Notwithstanding, the specification says nothing about modifying the image display to "exactly reflect" the desired appearance of the electronic document when printed.  Kodak's terminology infers that the manipulated image display should be the mirror image of the electronic document when printed.  But Figure 20 of the '149 patent shows an embodiment where the manipulation image display does not mirror the "desired appearance" of the document to be printed.  Figure 20 shows "a design view associated with the Flash Movie embodiment of the present invention for manipulating the still image proxy."  (Exhibit A at col. 3, lines 43-45.)  The design view in Figure 20 "is divided into layers to make it easier to manipulate the appearance of the graphic elements."  (Exhibit A at col. 10, lines 48-51.)  So the design view is not the mirror image, *i.e.*, does not "exactly reflect," the desired appearance of the electronic document when printed. Thus, Kodak's construction would exclude a disclosed embodiment, and "[a] claim construction that does not encompass a disclosed embodiment is thus 'rarely, if ever, correct.'"  *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1355 (Fed. Cir. 1998) (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996)).

Further, the patent discloses that there are other steps of the prepress process that can take place after a PDL file has been electronically manipulated by a user as disclosed in the claims. For example, the patent discloses that after the original PDL image file is revised in accordance with the manipulations to the still image proxy, there can be a "final step" in which "crop marks are removed if they are not needed in the electronic ad file (*i.e.*, the revised PDL image file)." (Exhibit A at col. 9, lines 7-10.)   In that situation the manipulated image display would not "exactly reflect" the appearance of the printed document, because the image display would contain crop marks and the printed document would not.  So again, Kodak's construction would impermissibly read out disclosed embodiments.

Kodak relies on the following passage to support its construction of the "electronically manipulating" steps:  "[a]n important feature of the present invention is that this process allows the user to view exactly how the ad will appear within the purchased ad space, as well as to correct any obvious sizing or alignment errors."  (Exhibit A at col.7, lines 30-34.)  For at least two reasons, Kodak's reliance on this passage is misplaced.  First, the passage relates to one embodiment in which the size or alignment of the document is to be reviewed for potential manipulation, but the patent claims are not limited to that one embodiment.  Second, the passage speaks to viewing the document prior to any manipulation being done, so it does not show that the image display must be manipulated to exactly reflect what the printed page will look like. Instead, it just explains that the user is allowed to view the still image proxy of the advertisement exactly how it would appear in terms of size and alignment.

The "electronically manipulating" passages should not be construed in their entirety as Kodak asks the Court to do.  The terms within those passages that possibly require construction can be construed on their own, as the parties both suggest.  Kodak's proposed construction of the

entire passages in addition to those nested terms is simply, and inarguably, an attempt to rewrite the claims.   If the Court does determine that any additional term requires construction, ColorQuick suggests that that term would be "electronically manipulated."   In that event the Court should accept ColorQuick's proposed construction.

**C.      The Steps of "Using the Information About the Manipulations to Revise the PDL Image File" Are Not Required to be Performed Automatically**

Kodak proposes that the Court rewrite the "using the information about the manipulations to revise" steps of claims 1, 2, 25, and 26.   ColorQuick urges the Court to reject Kodak's proposal.   Again, these steps are similarly worded, and Kodak will approach them collectively. The third step from those claims is reproduced below, with Kodak's proposed rewrites juxtaposed below them.

Existing language

"using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy"
(claims 1 and 25)

"using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy in relation to the template"
(claims 2 and 26)

Kodak's proposed construction

"using recorded information about the modification of the image display of the still image proxy to automatically modify one or more instructions in the PDL image file, such that the appearance of the electronic document when printed will be identical to the modified appearance of the image display of the still image proxy"
(claims 1 and 25)

"using recorded information about the modification of the image display of the still image proxy relative to the static template to automatically modify one or more instructions in the PDL image file, such that the appearance of the electronic

document when printed will be identical to the modified appearance of the image display of the still image proxy"
(claims 2 and 26)

It is unclear which terms Kodak believes to be in need of construction.  "PDL image file," "image display," and "still image proxy" are all jointly submitted by the parties for construction, and "static template" is separately submitted by Kodak.  Kodak has not given a compelling reason to construe, or rewrite, the step as a whole, or identified any other terms that need to be construed.  Kodak's request to rewrite the step should be denied.

Should the Court determine that the step needs further construction, ColorQuick suggests that the only additional term that might benefit from construction is the term "revise."  To be clear, ColorQuick believes that both a person of ordinary skill in the art and a lay juror would understand the meaning of "revise" in this context.  But, in the event the Court determines a lay juror would benefit from a definition, ColorQuick would propose that "revise" means simply "change or modify."  This alternative construction is consistent with the intrinsic record as well as extrinsic dictionary support.  The claim itself explains that the PDL image file is "revised" so as to match the manipulations made to the still image proxy.  (*See* Exhibit A at col. 11, lines 57-59.)  And the specification explains that "[t]he production server uses the physical manipulations and/or production specifications *to modify* the original PDL-defined image . . ." (Exhibit A at col. 8, lines 48-50 (emphasis added).)  The dictionary defines "revise" as "to reconsider and change or modify."  (Exhibit F, *American Heritage Dictionary* at 1492 (4th ed. 2000).)

In attempting to construe the entire step, Kodak improperly incorporates limitations from the specification into its proposed rewritten construction of this term.  Of course, this is improper under controlling Federal Circuit and Eastern District precedent.  *See Phillips*, 415 F.3d at 1323; *Liebel-Flarsheim,* 358 F.3d at 906; *Orion IP,* 406 F. Supp. 2d at 729.  First, Kodak suggests

adding a limitation that the claimed method "automatically modify" the PDL image file.  The claim language does not include the word "automatically," and Kodak's addition of it into the term is an improper attempt to incorporate an embodiment disclosed in the specification into the claims.  But the specification support that Kodak cites for support illustrates that automation of the revision step is only one option disclosed by the patent.  To wit, "*[a]nother option* in accordance with the present invention is to select an automated process called QuickFit$^{TM}$." (Exhibit A at col. 5, line 66 – col. 6, line 1 (emphasis added).)  Thus, the Court should reject Kodak's attempt to add an automation limitation where none is *required* by the specification.  *See GWIN, Inc. v. Don Best Sports*, No. 2:06-CV-318, 2008 WL 379690, *4 (E.D. Tex.  Feb. 11, 2008) (finding that person of skill in the art would understand that claims do not require automatic calculation, because the specification does not *require* it).

Further, Kodak suggests that the term be construed such that the "instructions" of the PDL image file are revised, as opposed to the PDL image file itself.  In the Joint P.R. 4-3 Statement, Kodak provides no support for this construction.  Kodak's focus on the "instructions" of the PDL image file—as also seen in the proposed construction of "PDL image file"—is unexplained and unsupported by the '149 patent.  There is no suggestion in the '149 patent that its claims should be limited to revision of "instructions" of the PDL image file as opposed to revision of the PDL image file generally.

Finally, there is no support for Kodak's proposed limitation that the eventual printed document must be "identical to the modified appearance of the image display."  Claim 1 discloses "using information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy."  It does not disclose that the revised PDL image file must be identical to the "modified appearance"

of the image display.  Further, the specification support that Kodak relies upon says that the manipulations are used "to modify the original PDL-defined image in a manner identical to the modifications made to the still image proxy."  (Exhibit A to Joint P.R. 4-3 Statement at 13 (Docket No. 42) (citing '149 patent at col. 8, lines 44-61).)  Again, this does not say that the modified PDL image file must be identical to the "modified appearance" of the still image proxy. Instead, both the claim and the specification require only the image display of the still image proxy must be revised (*i.e.*, modified) in a manner consistent with the manipulations (*i.e.*, modifications) made to the image display of the still image proxy.  (*See* Exhibit A at col. 8, lines 44-61 and col. 11, lines 55-59.)  Kodak's proposal is an attempt to have fact issues decided at the claim construction stage.

The Court should reject Kodak's attempt to rewrite the claimed steps of "using the information about the manipulations to revise the PDL image file."  As conceded by Kodak, the terms subsumed in this passage that require construction can and should be construed independently.  Should the Court determine that the passages require construction, ColorQuick asks the Court to reject the proposed constructions offered by Kodak, as they impermissibly seek to limit the claims to limitations described in the specification, and instead adopt the straightforward definitions proffered by ColorQuick.

## VI.   CONCLUSION

ColorQuick's approach to construction of the asserted claims of the '149 Patent is to construe only those terms that do not have their plain and ordinary meaning, and to construe them in a simple and concise manner so as to be more understandable to a lay juror than the claims themselves absent construction.  In contrast, Kodak's approach is to "construe" swaths of claim language by rewriting them in language more complex than the claims themselves.  In so

doing, Kodak asks the Court to incorporate limitations from the specification into the claims, even though the specification does not require such limitation.  Ultimately, Kodak asks the Court to give an impermissible advisory opinion as to infringement and validity.  Thus, ColorQuick asks that the Court adopt ColorQuick's proposed constructions.

Dated: April 16, 2008.                              Respectfully submitted,


                                                    _/s/  Justin B. Kimble_____
                                                    Michael W. Shore, Attorney-in-Charge
                                                    State Bar No. 18294915
                                                    Alfonso Garcia Chan
                                                    State Bar No. 24012408
                                                    Justin B. Kimble
                                                    State Bar No. 24036909
                                                    **Shore Chan Bragalone LLP**
                                                    325 N. St. Paul Street, Suite 4450
                                                    Dallas, Texas 75201
                                                    (214) 593-9110 Telephone
                                                    (214) 593-9111 Facsimile

                                                    ATTORNEYS FOR PLAINTIFF
                                                    COLORQUICK, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2008, I electronically submitted the foregoing document with the Clerk of Court for the United States District Court, Eastern District of Texas, using the CM/ECF system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Mark M. Supko
Richard M. McMillan, Jr.
David D. Cross
April M. Nelson
Crowell & Moring LLP
1001 Pennsylvania Avenue
Washington, DC 20004
202.624.2500 Main Number
202.628.5116 Fax
msupko@crowell.com
rmcmillan@crowell.com
dcross@crowell.com
anelson@crowell.com

Jennifer P. Ainsworth
Wilson Sheehy Knowles Robertson
    & Cornelius, PC
909 ESE Loop 323, Ste. 400
Tyler, Texas 75701
(903) 509-5000
(903) 509-5092 fax
jainsworth@wilsonlawfirm.com

*/s/ Justin B. Kimble*
Justin B. Kimble