IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| COLORQUICK, L.L.C. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 6:06-CV-390 |
| v. | § | |
| | § | JURY DEMANDED |
| EASTMAN KODAK COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF COLORQUICK, L.L.C.'S REPLY CLAIM CONSTRUCTION BRIEF**

Dated: May 7, 2008.                     Michael W. Shore, Attorney-in-Charge
                                        Alfonso Garcia Chan
                                        Justin B. Kimble
                                        **Shore Chan Bragalone LLP**
                                        325 N. St. Paul Street, Suite 4450
                                        Dallas, Texas 75201
                                        (214) 593-9110 Telephone
                                        (214) 593-9111 Facsimile

                                        ATTORNEYS FOR PLAINTIFF
                                        COLORQUICK, L.L.C.

**TABLE OF CONTENTS**

I. INTRODUCTION. ........................................................................................................... 1

II. ARGUMENTS AND AUTHORITIES .......................................................................... 2

    A. KODAK'S PROPOSED CONSTRUCTIONS CONFLATE THE MEANINGS OF "STILL IMAGE PROXY," "IMAGE DISPLAY," AND "PDL IMAGE FILE." . ................................... 2

    B THE CLAIMS SELF-DEFINE "STATIC TEMPLATE." ........................................................... 4

    C. "ELECTRONICALLY MANIPULATING" DOES NOT HAVE A SPECIAL MEANING IN THE '149 PATENT. ...................................................................................................... 5

    D. THE COURT SHOULD NOT REWRITE THE THIRD STEP OF CLAIMS 1, 2, 25, AND 26 ................................................................................................................... 8

III. CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

**CASES:**

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* No. 97-CV-4203 CRB,
  2000 WL 34204509 (N.D. Cal. Feb. 28, 2000) .......................................................................... 8

*Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.,* 132 F.3d 701 (Fed. Cir. 1997) ................... 10

*Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Sys., Inc.,* 528
  F.Supp.2d 967 (N.D. Cal. 2007) ............................................................................................... 1

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,* 224 F.3d 1308 (Fed. Cir. 2000) .. 3

*Grantley Patent Holdings, Ltd. v. Clear Channel Commc'n, Inc.,* No. 9:06CV259, 2008
  WL 112119 (E.D. Tex. Jan. 8, 2008). ....................................................................................... 8

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,* 452 F.3d 1312 (Fed. Cir. 2006).................................. 6, 7

*Pause Tech. LLC v. TiVo Inc.,* 419 F.3d 1326 (Fed. Cir. 2005) ...................................................... 8

*Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314 (Fed. Cir. 2003) ............................................ 4

*Ormco Corp. v. Align Tech. Inc.,* 498 F.3d 1037 (Fed. Cir. 2007) ................................................ 9

*SRI Intern. v. Matsushita Elec. Corp. of America,* 775 F.2d 1107 (Fed. Cir. 1985) ...................... 1

*Super Sack Mfg. Corp. v. Bulk-Pack, Inc.,* No. 4:90cv171, 1992 WL 96863 (E.D. Tex.
  Apr. 6, 1992) ............................................................................................................................ 1

**OTHER:**

Manual of Patent Examining Procedure § 803 (8th ed. Rev. 6, September, 2007) ......................... 8

## I.      INTRODUCTION

ColorQuick, L.L.C.'s ("ColorQuick") claims constructions are simple, straightforward, and designed to help the jury understand the claims. They are supported with citations to the intrinsic record and are corroborated by consistent dictionary definitions. On the other hand, Defendant Eastman Kodak Company ("Kodak") makes false claims that ColorQuick relies primarily on extrinsic evidence, offers claims constructions that are long, complicated, and likely confusing to the jury, and improperly combines the legal claims construction with factual determinations of infringement, validity, or both. Kodak's approach should be rejected.

Wholly out of place in claims construction, Kodak describes the accused product at length and explains why Kodak believes it is different from the inventions claimed in the '149 patent.[1] (Response at 5-6.) It is black-letter law that patent claims should not be construed in light of the accused device. *See SRI Intern. v. Matsushita Elec. Corp. of America,* 775 F.2d 1107, 1118 (Fed. Cir. 1985); *Super Sack Mfg. Corp. v. Bulk-Pack, Inc.*, No. 4:90cv171, 1992 WL 96863, *9 (E.D. Tex. Apr. 6, 1992) (Brown, J.); *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 528 F. Supp. 2d 967, 975 (N.D. Cal. 2007). Further, Kodak inaccurately describes products that Kodak has alleged to be prior art to the '149 patent in an attempt to improperly influence the Court's claim constructions. (Response at 6.) The nature of these products have absolutely no bearing on construction and should be ignored.

Kodak also mischaracterizes the inventions of the '149 patent. (Response at 2-4.) Kodak states that the '149 patent discloses only one invention, and then characterizes that invention as a "preflight" process. (Response at 3.) Kodak later characterizes its accused product as a "soft-proofing" product, again in an improper attempt to distinguish the accused device and argue noninfringement. (Response at 5-6.) Kodak's effort to provide the Court with shorthand, overview

---

[1] ColorQuick notes that Kodak's technical tutorial also described the accused Kodak product and juxtaposed that with a characterization of the inventions of the patent. But the technical tutorial is meant to be an unbiased explanation of the technology-in-suit to assist the Court in understanding the technology prior to claims construction.

descriptions of the patent and the accused product is not only misleading, but such general characterizations of the patent are irrelevant in claims construction. Notwithstanding the fundamental impropriety of that argument, the characterization of the '149 patent as a "preflight" patent is factually incorrect. One of the embodiments described in the detailed description show that "QuickFit" is enabled *after the "preflight report" is generated*. (Figs. 6-7; col. 5, line 57-col. 6, line 9.) QuickFit is described in the patent as a process for performing "one preferred embodiment of the present invention." (Col. 6, lines 8-9.) Thus, contrary to Kodak's assertions, the '149 patent does not describe a "preflight" process, but another step of the "prepress" process.

And Kodak continues to ask the Court to rewrite entire passages of the claims. As ColorQuick pointed out in its opening brief, Kodak asks the Court to rewrite six passages from claims 1, 2, 3, 25, 26, and 27, even though those passages include terms that are independently submitted to the Court for construction. This Court and others in the Eastern District of Texas have consistently rejected that approach to claim construction, and the Court should do so here.

## II. ARGUMENTS AND AUTHORITIES

### A. KODAK'S PROPOSED CONSTRUCTIONS CONFLATE THE MEANINGS OF "STILL IMAGE PROXY," "IMAGE DISPLAY," AND "PDL IMAGE FILE."

Kodak's construction of "still image proxy" conflates the meaning of that term with the meanings of "image display" and "PDL image file." Kodak's attempt to fit additional limitations into the meaning of "still image proxy" renders its construction unwieldy and wrong.

Kodak argues that the construction should include functional limitations that the "still image proxy" (1) "substitute[] for the PDL image file," and (2) "specif[y] the appearance of the electronic document when presented on a display screen." The first limitation is unnecessary because it is already provided by the claim language, which claims "creating a still image proxy of the PDL image file." (Col. 11, line 52.) It is redundant to add that limitation into the construction of "still image proxy." ColorQuick's construction avoids this by simply construing the "still image

proxy" to be "a still substitute image file, which may be a JPEG, GIF, and PNG file, or the like," consistent with the specification. (Col. 2, lines 42-44; col. 3, lines 66-67.)

As to the second limitation, Kodak appears to conflate the meaning of this term with the meaning of "PDL image file." Kodak argues that the "PDL image file specifies what the image will look like when it is printed" and that "the still image proxy specifies what the image display will look like when it is presented to the user on a computer display screen." (Response at 9-10.) But Kodak cannot point to anything in the '149 patent that supports the notion that the two have different functionalities. And the plain language of the term—"proxy"—suggests otherwise; the "still image proxy" is merely a substitute file for the "PDL image file."

It is interesting that Kodak argues that the "still image proxy" *specifies* the appearance of the electronic document while arguing that the "PDL image file" *defines* the appearance of the electronic document. Kodak does not explain the reason for using different verbs, but doing so illuminates the unnecessary confusion and complication added by Kodak's attempt to squeeze additional contrived limitations into these terms.

Kodak's construction of "still image proxy" is also conflated with its construction of "image display." Kodak suggests that the "still image proxy" "specifies the appearance of the electronic document when *presented on a display screen*" and that the "image display" is "a visual representation *presented on a display screen*" (emphasis added). (Response at 9-11.) This conflation impermissibly eliminates any difference between the "still image proxy" and the "image display." *See CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,* 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of evidence to the contrary, we must presume that the use of different terms in the claims connotes different meanings."). In contrast, ColorQuick's constructions of the terms give each a separate, understandable meaning. The "PDL image file" defines the appearance of an electronic document, the "still image proxy" is simply a substitute of the "PDL image file," and the "image display" is a graphic representation of the "still image proxy"

on a screen. Again, these constructions are supported by the specification. (Col. 2, lines 42-44; col. 10, lines 48-51; col. 2, lines 40-42.)

As Kodak admits, the differences between the parties' constructions of "image display" are minor. The principal difference between them is that Kodak again seeks to add a functional limitation to the meaning of the term—that the "image display" must be "presented on a display screen." Kodak's only alleged support for that inclusion is the description of Figures 8-13 of the '149 patent, which simply says that those figures "show display screens of a user interface presented at a browser." (Col. 3, line 22.) The figures show screenshots taken from one embodiment of the patent—ColorQuick's QuickFit product. (*Id.*) But these figures simply show that QuickFit can be accessed via an internet browser, through which QuickFit is presented to the user. Thus, neither the figures nor the short description of them support Kodak's argument that the "image display" of the "still image proxy" must be "presented on a display screen." There is no "clear and unmistakable" disclaimer of subject matter that would limit the scope of the claims. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).

The difference between the parties' constructions of "PDL image file" is minor. Kodak appears to admit that its inclusion of the word "instructions" in its construction is inherent within the meaning of a computer language and thus understood to a person of skill in the art. Thus, even Kodak admits ColorQuick's construction is simpler and equally complete, and should be adopted.

**B.  THE CLAIMS SELF-DEFINE "STATIC TEMPLATE."**

ColorQuick maintains that this term does not require construction because it is self-defined by the claim language itself. (Opening Brief at 9-10.) If the Court determines it does require construction, ColorQuick has provided an alternative construction that is consistent with that self-definition. But the fact that ColorQuick's alternative construction is consistent with the use of the term within the claims demonstrates that it does not require construction.

Kodak's justification of its construction also shows that the term does not require construction. Kodak "piec[es] together the different parts of the claim" to support its construction. (Response at 13-14.) If the claim can be "pieced together" to create a definition of a term within the claim, why does Kodak contend that it needs construction separate and apart from the claim language? The answer must be that Kodak wants to reconfigure the claim such that the term is construed to add unsupported limitations to the term—such as that it include a "fixed frame presented on a display screen"—calculated to support later noninfringement or invalidity arguments. Nowhere in the patent do the words "fixed frame" appear, and Kodak points to no other intrinsic or extrinsic evidence in support of them. Kodak appears to have chosen those words solely to set up a later noninfringement or invalidity argument, and they are blatantly inconsistent with the portion of the specification that Kodak cites in support, which says that the static template may be dynamically created. (Response at 13.)

Finally, Kodak's argument that ColorQuick's alternative construction is inconsistent with the claim is wrong. ColorQuick's alternative construction referring to "a predetermined area *for an image display*" is accurate, because the image display is displayed in association with the "static template" that defines the predetermined area. (Col. 11, line 60-col. 12, line 13.)

C. **"ELECTRONICALLY MANIPULATING" DOES NOT HAVE A SPECIAL MEANING IN THE '149 PATENT.**

Kodak rewrites three passages relating to the term "electronically manipulating." (Opening Brief at 13 and 15.) Kodak claims that the passage "electronically manipulating an image display of a still image proxy" should be construed in its entirety. But Kodak never explains why the entire passage should be construed even though "image display" and "still image proxy" are also submitted independently for construction, or how Kodak's proposed construction of the entire passage would fit with the constructions of those two terms. "Electronically manipulating" does not have a "special meaning" in the '149 patent, and thus it does not require construction. Kodak cites

to examples of electronic manipulation that are given in the specification as evidence that it does have a special meaning, but nowhere in the specification is the term "electronic manipulation" (or "electronically manipulating") defined. When the patentee desired to define terms, he did so explicitly, as with "still image proxy," where he stated that "the still image proxy may be a JPEG file, a GIF file, a PNG file, or the like." (Col. 3, lines 66-67.) In contrast, the specification broadly states that "the still image proxy can be manipulated in any manner that the original PDL image file may be manipulated." (Col. 7, lies 10-12.) Such an open-ended statement does not confer a special meaning on "electronically manipulating," and certainly not a meaning as limited as the one Kodak suggests.

Particularly troubling is the second half of Kodak's proposed construction—that the image display be modified "to reflect the desired appearance of the electronic document when printed."[2] In support Kodak relies on one sentence from one embodiment of the specification:

> An important feature of the present invention is that this process allows the user to view exactly how the ad will appear within the purchased ad space, as well as to correct any obvious sizing or alignment errors.

(Col. 7, lines 30-34.) This sentence is part of an explanation of only one embodiment disclosed in the specification, the ColorQuick "QuickFit" product, which is illustrated in Figures 8-13 of the patent. Kodak argues that the use of the words "the present invention" means that the feature described is required by all claims of the patent. But the case Kodak relies on in support, *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312 (Fed. Cir. 2006), is distinguishable. In that case, the specification stated on four occasions that "the invention" was only a fuel filter, and the court found that "no other parts [were] described" in the specification. *Id.* at 1316. In contrast, in this case Kodak points to only one sentence that is describing a feature of what is clearly one

---

[2] ColorQuick notes that Kodak has conceded that the term need not be limited such that the modifications *exactly* reflect the desired appearance of the electronic document when printed (Response at 16), and ColorQuick will proceed with that understanding going forward.

embodiment of the patent directed to the sizing of an advertisement. Even Kodak does not go so far as to argue that the cited passage limits the claims to sizing of advertisements, as that would lead to a ridiculous outcome. But, instead, Kodak cherry-picks from the cited language to find limitations relevant to Kodak's noninfringement and invalidity arguments. The passage is clearly just an example of a feature of one embodiment.[3]

Kodak's attack of ColorQuick's alternative construction of "electronically manipulating" as being overly broad is misplaced. ColorQuick's alternative construction—"managing, altering, or using by electronic means"—is consistent with the '149 patent's broad explanation that "the still image proxy can be manipulated in any manner that the original PDL image file may be manipulated." (Col. 7, lines 10-11.)

And Kodak's argument that the patentee surrendered scope as to "electronically manipulating" during prosecution by making an election of species in response to a restriction requirement is contrary to well-settled law. The Federal Circuit, in a case cited by Kodak for another proposition, stated that "[w]e also do not assign much weight to the patent examiner's restriction requirement . . . during prosecution . . . In making the restriction requirement, the examiner did not construe the term . . . or determine its meaning in light of the written description." *Honeywell Int'l*, 452 F.3d at 1319. Furthermore, the PTO's restriction requirement did not coincide with a rejection over prior art (*See* Exhibit B to Response), and thus was purely administrative. *See Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, No. 97-CV-4203 CRB, 2000 WL 34204509, at 15 (N.D. Cal. Feb. 28, 2000) (refusing to limit claim language in view of

---

[3] In its opening brief ColorQuick points to Figure 20 to show that the manipulated image display does not have to reflect the desired appearance of the printed document. (Opening Brief at 18.) Kodak charges that ColorQuick mischaracterizes Figure 20, but that is not true and is not supported by any evidence. Figure 20 shows the design view of the QuickFit software, and the specification explains that the software is "divided into layers to make it easier to manipulate the appearance of graphic elements." (Col. 10, lines 49-52.) By showing the source code graphically in this way, the specification shows that that embodiment is able to manipulate certain layers, *i.e.*, graphic elements, of the still image proxy independently. Thus, because a certain layer can be manipulated independently, the manipulated still image proxy may not reflect the actual appearance of the printed document.

administrative restriction requirement). ColorQuick's election of a species pursuant to a restriction requirement does not mean that there can be no overlap between any element of the cancelled claims and the elements of the patented claims. The purpose of a restriction requirement is merely to assist the examiner in searching for prior art and examining the claims. *See* Manual of Patent Examining Procedure § 803 (8th ed. Rev. 6, September, 2007). Further, the fact that an election of species restriction was made by the PTO contradicts Kodak's argument that only one invention was set forth in the '149 patent's disclosure.

**D.    THE COURT SHOULD NOT REWRITE THE THIRD STEP OF CLAIMS 1, 2, 25, AND 26.**

The clearest example of Kodak's desire to rewrite the claims is with the third step of claims 1, 2, 25, and 26. Kodak asks the Court to construe these steps as a whole without pointing to any particular words therein that need construction apart from the three terms that are separately construed by the parties. That is exactly what Judge Clark refused to do in *Grantley Patent Holdings, Ltd. v. Clear Channel Commc'n, Inc.*, No. 9:06CV259, 2008 WL 112119, *9 (E.D. Tex. Jan. 8, 2008).

The case Kodak cites, *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326 (Fed. Cir. 2005), does not support its position. That case stands for the proposition that a claim term should not be construed out of the context of the surrounding claim language. *Id.* at 1331. But ColorQuick does not ask this Court to construe any terms out of context. Rather, ColorQuick suggests that Kodak has not identified any specific terms for construction, and that it is improper to simply construe entire elements or steps without identifying any specific terms that are in dispute.

In *Pause Tech.*, the relevant part of the claim read as follows (with the terms submitted for construction in **bold**): "a variable delay **circular storage buffer** for storing those of said digital input signal values which were received during the immediately preceding **time intervals of predetermined duration . . .**" *Id.* at 1328. The *Pause Tech.* court rejected Pause Tech.'s argument that the court should construe those two terms without reference to the remainder of the claim

language. *Id.* Again, ColorQuick has not asked this Court to ignore explicit limitations from the claims read in proper context.

Kodak asks the Court to insert into this step a limitation that one or more instructions of the PDL image be *automatically* revised. (Response at 21.) Not only is this limitation not included in the claim itself, but it is not present in the specification.[4] The case Kodak cites to support its position, *Ormco Corp. v. Align Tech. Inc.*, 498 F.3d 1037 (Fed. Cir. 2007), is easily distinguished. In *Ormco*, the critical feature that distinguished the patent-in-suit from the prior art was "automatically determining an ideal finish portion of the teeth," because in the prior art "some decision making" by an operator was required. *Ormco*, 498 F.3d at 1315. The specification of the patent-in-suit in that case repeatedly emphasized that particular distinction over the prior art. *Id.* at 1314-16. But even then, the court emphasized that those statements, standing alone, were not conclusive to limit the claims. *Id.*

Thus, *Ormco* is distinguishable from this case because there is not a single sentence in the specification of the '149 patent that requires automatic revision of the original PDL file. There is no mention of automatic revision or similar terms anywhere in the specification. Kodak relies heavily on the following section from the patent: "the service bureau uses automated software to revise the original image file." (Col. 6, lines 5-7.) But this passage does not state that the software must *automatically revise* the image file, but rather that the process uses *automated software* to revise. Indeed, software may have certain functionalities that are automated and others that are not. The patent discusses generally that the inventions disclosed therein are "automated computer-implemented process[es]" or are directed to assist users "within an automated environment," but the

---

[4] In addition to the fact that neither the claims nor the specification require *automatic* revision, Kodak's proposed construction is also flawed in that it is limited to modification of "one or more instructions" of the PDL image file. PDL files contain both instructions and image data, and Kodak provides no support for the notion that the claims do not cover modification of a PDL file's image data.

patent does not require that any specific step of the processes must be performed without user input or choice. (Col. 3, lines 54-55; col. 2, lines 29-33.)

Kodak points in a footnote to a source code listing for a prototype that was submitted to the PTO in an appendix to the application, and also to deposition testimony of the inventor about that prototype. (Response at 23.) Kodak's inference appears to be that the Court should limit the claims to the prototype that the inventor submitted to the PTO, but such a limitation would be inappropriate and Kodak points to no authority stating otherwise.[5] Kodak's reliance on this extrinsic evidence belies its own arguments that claims should be construed using only intrinsic evidence. (Response at 8.)

Kodak also asks the Court to limit these steps such that "the electronic document when printed will be identical to the modified appearance of the image display of the still image proxy." First, as explained in section C above, the patent is not limited to the feature discussed at column 7, lines 30-34 of the '149 patent, which pertains to a specific embodiment. Second, the other portion of the specification that Kodak cites actually contradicts its argument. That the production server modifies the original PDL image file "in a manner identical to the modifications made to the still image proxy" only means that the manner of modifying is identical, not that the modified PDL image file is identical to the manipulated still image proxy. (Col. 8, lines 48-51.)

Kodak does not claim that any particular words would be unclear to a jury, or even a person of ordinary skill in the art. Instead, Kodak relies only on wrongly-applied legal principles to suggest that the entire steps be rewritten. Thus, there is no need to rewrite these steps of the methods as Kodak asks the Court to do.

### III. CONCLUSION

ColorQuick respectfully requests that the Court adopt ColorQuick's proposed constructions.

---

[5] Also, the Federal Circuit has said that post-issuance opinion testimony by a patent's inventor should be accorded little or no weight. *See Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997).

Dated: May 7, 2008.　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Justin B. Kimble*
　　　　　　　　　　　　　　　　　　　　　　　Michael W. Shore, Attorney-in-Charge
　　　　　　　　　　　　　　　　　　　　　　　State Bar No. 18294915
　　　　　　　　　　　　　　　　　　　　　　　Alfonso Garcia Chan
　　　　　　　　　　　　　　　　　　　　　　　State Bar No. 24012408
　　　　　　　　　　　　　　　　　　　　　　　Justin B. Kimble
　　　　　　　　　　　　　　　　　　　　　　　State Bar No. 24036909
　　　　　　　　　　　　　　　　　　　　　　　**Shore Chan Bragalone LLP**
　　　　　　　　　　　　　　　　　　　　　　　325 N. St. Paul Street, Suite 4450
　　　　　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　　　　　(214) 593-9110 Telephone
　　　　　　　　　　　　　　　　　　　　　　　(214) 593-9111 Facsimile

　　　　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR PLAINTIFF
　　　　　　　　　　　　　　　　　　　　　　　COLORQUICK, L.L.C.

## CERTIFICATE OF SERVICE

　　　I hereby certify that on this 7th day of May, 2008, I electronically submitted the foregoing document to the following attorneys of record who have consented in writing to accept service of this document by electronic means. I did not formally file this document with the Clerk of the Court on this date due to the technical failure with the Court's CM/ECF database, but will file this document electronically on the 12th day of May, 2008, per General Order 08-6.

| | |
|---|---|
| Mark M. Supko | Jennifer P. Ainsworth |
| Richard M. McMillan, Jr. | Wilson Sheehy Knowles Robertson |
| David D. Cross | 　　& Cornelius, PC |
| April M. Nelson | 909 ESE Loop 323, Ste. 400 |
| Crowell & Moring LLP | Tyler, Texas 75701 |
| 1001 Pennsylvania Avenue | (903) 509-5000 |
| Washington, DC 20004 | (903) 509-5092 fax |
| 202.624.2500 Main Number | jainsworth@wilsonlawfirm.com |
| 202.628.5116 Fax | |
| msupko@crowell.com | |
| rmcmillan@crowell.com | |
| dcross@crowell.com | |
| anelson@crowell.com | |

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Justin B. Kimble*
　　　　　　　　　　　　　　　　　　　　　　　Justin B. Kimble