**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| COLORQUICK, L.L.C.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>EASTMAN KODAK COMPANY,<br><br>　　Defendant. | CIVIL ACTION NO. 6:06-CV-390 |

**KODAK'S OBJECTIONS TO CLAIM CONSTRUCTION ORDER**

　　　　　　　　　　　　　　　　　　Mark M. Supko (*pro hac vice*)
　　　　　　　　　　　　　　　　　　msupko@crowell.com
　　　　　　　　　　　　　　　　　　David D. Cross *(pro hac vice)*
　　　　　　　　　　　　　　　　　　dcross@crowell.com
　　　　　　　　　　　　　　　　　　**CROWELL & MORING, LLP**
　　　　　　　　　　　　　　　　　　1001 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　　　　　Washington, DC 20004-2595
　　　　　　　　　　　　　　　　　　Telephone: (202) 624-2500
　　　　　　　　　　　　　　　　　　Facsimile: (202) 628-5116

　　　　　　　　　　　　　　　　　　Jennifer Ainsworth
　　　　　　　　　　　　　　　　　　State Bar No. 00784720
　　　　　　　　　　　　　　　　　　jainsworth@wilsonlawfirm.com
　　　　　　　　　　　　　　　　　　**WILSON, SHEEHY, KNOWLES,
　　　　　　　　　　　　　　　　　　ROBERTSON & CORNELIUS, PC**
　　　　　　　　　　　　　　　　　　One American Center
　　　　　　　　　　　　　　　　　　909 ESE Loop 323, Suite 400
　　　　　　　　　　　　　　　　　　Tyler, Texas 75701
　　　　　　　　　　　　　　　　　　Telephone: (903) 509-5000
　　　　　　　　　　　　　　　　　　Facsimile: (903) 509-5092

　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　Dated: July 10, 2008　　　　　　　*Eastman Kodak Company*

Pursuant to Federal Rule of Civil Procedure 72(a), Defendant Eastman Kodak Company ("Kodak") hereby objects to certain of the claim constructions set forth in the Memorandum Opinion & Order entered by Magistrate Judge Love on June 25, 2008 (hereinafter, "Order").[1]

## I. THE COURT'S CONSTRUCTION OF "ELECTRONICALLY MANIPULATING" IS CONTRARY TO THE INTRINSIC EVIDENCE

Kodak respectfully submits that the Court erred in construing the term "electronically manipulating," adopting an overly-broad construction that fails to recognize the difference between "electronically manipulating" and "appending production specifications." For the reasons set forth below, Kodak proposes that the Court's construction of "electronically manipulating" be modified as follows:

> electronically modifying the appearance of the image display of the still image proxy~~, or electronically appending production specifications~~ to reflect the desired appearance of the electronic document when printed.

### A. "Electronically Manipulating" and "Appending Production Specifications" Are Separate and Distinct Processes in the '149 Patent

Largely relying on the fact that the specification of U.S. Patent No. 6,839,149 ("the '149 patent") describes an embodiment in which production specifications may be appended to the image display of the still image proxy, the Court construed the term "electronically manipulating" to expressly include "electronically appending production specifications." Order at 14-21. In doing so, the Court failed to recognize that the '149 patent describes (and originally claimed) these as two separate and distinct processes, as is confirmed by the prosecution history of the patent.

---

[1] Kodak incorporates and relies upon the arguments in Eastman Kodak Company's Responsive Claim Construction Brief filed May 1, 2008.

As originally filed, the application for the '149 patent included three distinct sets of claims clearly directed to each of a "first embodiment" (claims 1-12, 20-31 and 39-50), "second embodiment" (claims 13-15, 32-34 and 51-53), and "third embodiment" (claims 16-19, 35-38 and 54-57). *See* U.S. Patent Application No. 10/103,510, 16-26 ("the '510 application") (Ex. A). The "second embodiment" involves appending "production specifications" to the still image proxy, which can then be used to prepare a print job. '149 Patent at 4:34-53, 10:1-19 (Ex. B).

Within each set of claims in the '510 application, there are method claims, apparatus claims, and article of manufacture claims. The following mark-up of original method claim 1 shows the differences between that claim (drawn to the first embodiment) and original method claim 13 (drawn to the second embodiment):[2]

> 1. An automated computer-implemented method of preparing production data for a print job, the production data including an electronic document defined by a page description language (PDL), the electronic document being stored in a PDL image file, the method comprising:
>
> (a) creating a still image format proxy of the PDL image file;
>
> (b) electronically ~~manipulating~~ <u>appending production specifications to</u> the still image format proxy and recording information about the ~~manipulations~~ <u>production specifications</u>; and
>
> (c) using the information about the ~~manipulations~~ <u>production specifications</u> ~~to revise the PDL image file so as to match the PDL image file to the manipulations made to the still image format proxy~~ <u>to prepare production data for the print job</u>.

'510 Application at 16-18. Comparable differences exist between original apparatus claims 20 and 32, and original article of manufacture claims 39 and 51. *See id.* at 19-21, 23-25. The original claims thus show that, contrary to the Court's finding (*see* Order at 14), "appending

---

[2] Deletions are struck through and additions are underlined.

production specifications" is not a form of "electronically manipulating," but is instead a different process.

When the inventor wanted to claim the "appending production specifications" embodiment described in the specification, he did so expressly and unambiguously. '510 Application at 17-25 (claims 13-15, 32-34, 51-53). However, each and every one of the original claims that recited "appending production specifications" was canceled during prosecution in response to the examiner's restriction requirement. Resp. to Restriction Requirement, Dec. 18, 2003, 2 (Ex. C). Colorquick later pursued those claims in a separate "divisional" patent application specifically directed to the "appending production specifications" embodiment, which application issued as U.S. Patent No. 7,298,516 (Ex. D). Issued claim 1 of the '516 patent corresponds to original claim 13 canceled from the application that led to the '149 patent:

> 1. An automated computer-implemented method of preparing production data for a print job, the production data including an electronic document defined by a page description language (PDL), the electronic document being stored in a PDL image file, the method comprising:
>
> (a) creating an image display of a still image proxy of the PDL image file;
>
> (b) electronically appending production specifications to the image display of the still image proxy and recording information about the appended production specifications; and
>
> (c) using the recorded information about the appended production specifications to prepare production data for the print job.

'516 Patent at 11:50-63. The prosecution history thus demonstrates that the applicant did *not* intend for the claims of the '149 patent to also cover that same embodiment. Moreover, there is nothing in the '149 patent or its prosecution history to suggest that the term "electronically manipulating" was intended to include "appending production specifications," as opposed to those being distinct operations. *Compare* '149 Patent at 3:54-4:33 (describing first embodiment)

- 3 -

*and* 4:34-53 (describing second embodiment). Moreover, none of the original claims, whether dependent or independent, claimed these separate processes in combination. *See* '510 Application at 16-26.

The Court appears to have concluded that because the specification of the '149 patent describes both an "electronically manipulating" embodiment and an "appending production specifications" embodiment, each and every claim of the '149 patent must be construed broadly enough to encompass both embodiments. *See* Order at 15. But the Federal Circuit expressly rejected that line of reasoning in a case whose facts are very close to the one at hand. *Acco Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) ("The presence in the '989 specification of embodiments carried over from the parent application, but claimed in other patents, does not serve to broaden the scope of the '989 claims that were the subject of the divisional application."). Under U.S. patent law, when a divisional application is filed, the description corresponding to the divided-out claims is not deleted from the specification of the original application. That is why the disclosure supporting the "appending production specifications" claims of the '516 patent still appears in the '149 patent. But as the Federal Circuit instructed in *Acco*, that additional disclosure does not serve to broaden the scope of the '149 patent claims.

By construing the claims of the '149 patent to expressly encompass "appending production specifications" to the image display of the still image proxy, the Court has done what Colorquick could not have properly done during prosecution of the '149 patent. Restriction practice is not merely an administrative convenience, as the Court appears to have concluded, but instead has a statutory basis. *See* 35 U.S.C. § 121 ("If two or more independent and distinct inventions are claimed in one application, the Director may require the application to be

- 4 -

restricted to one of the inventions.") When an election is made in response to a restriction requirement, a "line of demarcation" must be maintained between the different inventions that prompted the restriction requirement. *Gerber Garment Technology, Inc. v. Lectra Systems, Inc.*, 916 F.2d 683, 688 (Fed. Circ. 1990) ("Though the claims may be amended, they must not be so amended as to bring them back over the line imposed in the restriction requirement."). Through its claim construction, the Court has effectively eliminated the demarcation between the different inventions claimed in the '149 and '516 patents.

It should be noted that Kodak is not trying to use Colorquick's election in response to the restriction requirement to narrow a broad construction that is otherwise supported by the intrinsic evidence. In fact, prior to entry of the restriction requirement during prosecution of the '149 patent, Colorquick unequivocally acknowledged that these are separate embodiments in a submission to the Patent Office. *See* Petition to Make Special, Oct. 21, 2002, 2 (Ex. E) As noted above, the distinction between "electronically manipulating" and "appending production specifications" is clear from the specification of the '149 patent itself. Accordingly, the several district court cases cited by the Court are inapposite. *See* Order at 16-17.[3] There is nothing in the specification of the '149 patent to suggest that the inventor intended the term "electronically manipulating" to encompass "appending production specifications." To the contrary, the '149

---

[3] Of course, those district court cases do not trump *Acco*, in which the Federal Circuit *did* look to the prosecution history relating to a restriction requirement as part of its claim construction analysis. *See Acco*, 346 F.3d at 1079. Likewise, in *Honeywell Int'l, Inc. v. ITT Industries, Inc.*, 452 F.3d 1312 (Fed. Cir. 2006), the Federal Circuit never suggested that an election in response to a restriction requirement should be ignored during claim construction. Rather, the court found that under the facts of that case, the examiner's restriction requirement did not support the patentee's argument that a particular claim term should be construed more broadly than the district court had held. *Honeywell*, 452 F.3d at 1319.

patent and its prosecution history demonstrate that "electronically manipulating" and "appending production specifications" are two different operations.

### B. The Court's Construction Encompasses "Manipulations" that Have Nothing to Do with the Alleged Invention

In construing "electronically manipulating," the Court declined to restrict the scope of the term to modifications that "reflect the desired appearance of the electronic document when printed." Order at 13. The primary basis for not adopting this limitation was the Court's concern that doing so would exclude the "appending production specifications" embodiment from the scope of the claim. *Id.* at 13 n.9. As just discussed, however, the term "electronically manipulating" should *not* encompass that embodiment, and thus the Court's rationale was flawed. Moreover, the result of not adopting this additional limitation is a substantially over-broad construction that is not properly tied to what the patent describes as the invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

To illustrate the over-breadth problem, the term "electronically manipulating" as construed by the Court would cover using the brightness control on a monitor to dim or brighten the display, since that would "modify[] the appearance of the image display of the still image proxy." So too would the Court's construction cover minimizing a window in which the image display of the still image proxy is being viewed, since that would also modify its appearance. But such operations are plainly not what the inventor meant by "electronically manipulating."[4]

---

[4] The Court was mindful of trying to avoid a construction that encompassed "activities which are unquestionably outside the scope of invention, such as powering off the image display," Order at 13, but its construction still suffers from that defect.

Rather, it is clear from the '149 patent that the inventor was trying to claim modifying the image display of the still image proxy in a manner reflective of how the final printed document is to appear. *See, e.g.,* '149 Patent at 7:30-34 ("An important feature of the present invention is that this process allows the user to view exactly how the ad will appear within the purchased ad space, as well as to correct any obvious sizing or alignment errors.").[5] Indeed, that is why all of the independent claims recite "*match[ing]* the PDL image file to the manipulations made to the image display of the still image proxy." '149 Patent at 11:56-59 (claim 1) (emphasis added); *see also Id.* at 12:54-57 (claim 13), 13:63-14:2 (claim 25).

## II. THE COURT'S CONSTRUCTION PROVIDES INSUFFICIENT GUIDANCE TO THE JURY AS TO WHAT IT MEANS TO "MATCH" A PDL FILE TO MANIPULATIONS MADE TO AN IMAGE DISPLAY

Although the Court expressly determined that the term "using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy" requires construction, Order at 22, Kodak respectfully submits that the construction adopted by the Court provides inadequate guidance to the jury on a key aspect of the claim term, namely, the "matching" requirement. For the reasons that follow, as well as those previously presented to the Court, Kodak therefore proposes the following modification of the Court's construction of :

> using the information about the manipulations to revise the PDL image file with automated software <s>so as to match the PDL image file to the manipulations made to</s> such that the appearance of the electronic document when printed will match the modified appearance of the image display of the still image proxy

While recognizing that the asserted claims require revising the PDL image file to "match

---

[5] The Court dismissed this statement as relating only to the "electronically manipulating" embodiment, Order at 13 n.9, but as discussed above, the "appending production specifications" embodiment is outside the proper scope of the claims of the '149 patent.

the PDL image file to the manipulations made to the image display of the still image proxy," the Court declined to construe the claims to require modifying the PDL image file "such that the appearance of the electronic document when printed will be identical to the modified appearance of the image display of the still image proxy." In particular, the Court stated that "[w]ith the exception of noting the automated nature of the process, there is no better way to phrase the process than the claim language has already done." Order at 29 n.17. Kodak respectfully disagrees.

In adopting its construction, the Court expressed a concern that the word "identical" in Kodak's proposed construction was "overly limiting." *Id.* at 29. For the reasons set forth in Kodak's claim construction brief and at the *Markman* hearing, Kodak continues to believe that this limitation is fully supported by the intrinsic evidence. *See, e.g.,* '149 Patent at 8:48-51 ("The production server uses the physical manipulations and/or production specifications to modify the original PDL-defined image in a manner identical to the modifications made to the still image proxy.").[6] However, mindful of the Court's concern, Kodak proposes replacing "identical to" with "match" in its proposed construction to avoid the risk that a jury might apply the construction too literally (*e.g.*, by requiring that the size of a printed image be exactly the same as the size of the image as shown on a particular user's monitor).

---

[6] In reaching its decision, the Court read this sentence as requiring only that "the manner of making the modifications [to the image display of the still image proxy and to the PDL image file] are identical, not that the actual printed document will necessarily be identical to the manipulated image display." Order at 28. Kodak respectfully submits that this reading is flawed. The '149 patent teaches that the manner of making modifications to the image display of the still image proxy is by using a browser-based application program, such as a Flash Movie plug-in, to manipulate the image display. '149 Patent at 6:61-7:39. Nowhere does the '149 patent even remotely suggest that the PDL image filed is revised in the same way. To the contrary, the Appendix of the '149 Patent is a computer program which, when executed, revises the contents of the PDL image file with no further user intervention. *Id.* at 8:44-61, 10:20-47.

The concept of "matching" a print file to "electronic manipulations" of an image presented on a display is not one that is likely to be familiar or readily understandable to lay jurors. Accordingly, Kodak respectfully submits that its proposed modification of the Court's construction will be more useful to a jury – and more likely to result in a decision based on a proper claim scope – than simply leaving the jury to figure out for themselves what most of the words in this lengthy claim limitation actually mean.

                                                    Respectfully submitted,

Dated: July 10, 2008                                /s/ Mark M. Supko
                                                    Mark M. Supko (*pro hac vice*)
                                                    msupko@crowell.com
                                                    David D. Cross *(pro hac vice)*
                                                     dcross@crowell.com
                                                   **CROWELL & MORING, LLP**
                                                   1001 Pennsylvania Avenue, N.W.
                                                   Washington, DC 20004-2595
                                                   Telephone: (202) 624-2500
                                                   Facsimile: (202) 628-5116

                                                   Jennifer Ainsworth
                                                   State Bar No. 00784720
                                                   jainsworth@wilsonlawfirm.com
                                                   **WILSON, SHEEHY, KNOWLES,**
                                                   **ROBERTSON & CORNELIUS, PC**
                                                   One American Center
                                                   909 ESE Loop 323, Suite 400
                                                   Tyler, Texas 75701
                                                   Telephone: (903) 509-5000
                                                   Facsimile: (903) 509-5092

                                                   *Attorneys for Defendant*
                                                   *Eastman Kodak Company*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of July, 2008, he electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Eastern District of Texas using the CM/ECF System. The CM/ECF System sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

>Michael W. Shore, Esq.
>Justin B. Kimble, Esq.
>SHORE CHAN BRAGALONE LLP
>325 N. St. Paul Street, Suite 4450
>Dallas, Texas 75201
>Phone: (214) 593-9110
>Fax: (214) 593-9111

>>_/s/ David Cross_
>>David Cross